**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| JAY WILFONG,<br><br>Plaintiff,<br><br>v.<br><br>STARSTRUCK ENTERTAINMENT AND THE ALEXANDER TRUST,<br>Defendants. | ) | Case No.: 3:23-cv-00044<br><br>Judge: Aleta Trauger<br><br>Magistrate Judge: |

**DEFENDANTS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND MEMORANDUM OF LAW IN SUPPORT**

Defendants Starstruck Entertainment, LLC ("SEL") and The Alexander Trust ("TAT") (collectively, "Defendants"), pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), and Federal Rule of Civil Procedure 54(d), respectfully move this Court for an order declaring this case exceptional and awarding Defendants their reasonable attorneys' fees and costs incurred in this action and in the predicate Trademark Trial and Appeal Board ("TTAB") proceeding.

This case is exceptional. Plaintiff Jay Wilfong pursued his case through a TTAB trial cancelling the STARSTRUCK FARM mark, and finally to this appeal from the TTAB, with a position that was not only substantively weak but was advanced through testimony that was directly contradicted by his own marketing materials and social media. Plaintiff's entire case depended on a purported absence of confusion between the STARSTRUCK FARM mark and the STARSTRUCK mark, and at trial, Mr. Wilfong testified that he had no interest in managing musicians and that he carefully curated his social media to avoid infringing uses of the STARSTRUCK mark to market Starstruck Farm. Cross-examination revealed these statements to be false. Confronted with incontrovertible evidence of his business offering "artist development"

and "sponsorship" packages for musicians, and dozens of infringing social media posts, Plaintiff immediately abandoned his case and moved for voluntary dismissal.

Plaintiff's conduct—forcing Defendants to fully litigate a meritless appeal for *years*, only to immediately fold when confronted with dispositive, contradictory evidence from his own marketing and social media posts at trial—renders this case exceptional. For the reasons set forth below, Defendants request an award of their fees, totaling $563,748.88.

## I. INTRODUCTION

After seven years of litigation, first before the TTAB and then before this Court, Plaintiff's case immediately collapsed at trial. It did so because Plaintiff's own trial testimony—the foundation of his narrative that he was merely operating an Airbnb/glamping facility and agri-tourism farm with "ancillary" music events—was exposed as demonstrably false by his own business's public-facing advertisements. Specifically, Plaintiff testified:

1. That he would never want to be in the business of artist management, testifying, "Last thing I would ever want to do with my life would be manage a bunch of musicians . . . no. Absolutely not." (Trial Tr: 38:3-6).
2. That he diligently policed his social media to ensure the standalone mark "Starstruck" was not used without the word "Farm" and that he was careful to educate his employees to do the same. (Trial Tr. 32:19-33:2, 33:10-16).

Cross-examination proved otherwise. Defendants showed Plaintiff his own advertisement for "The Rising Star Sessions" at Starstruck Farm, which offered winners a "Sponsorship & Artist Development Package" including "professional promotion, advertising, branding, and guidance." (Trial Tr. 71:17-72:18). Defendants also identified at least 61 separate instances where Plaintiff's business used the mark "Starstruck" in isolation. (Trial Tr. 64:21-25). Confronted with this evidence, Plaintiff acknowledged its authenticity and, at the close of his evidence, moved to voluntarily dismiss his case under Rule 41(a)(2). The Court granted the motion, expressly preserving Defendants' right to file this application.

Plaintiff's conduct meets the standard for an exceptional case under the Lanham Act. He prosecuted a baseless appeal over multiple years and attempted to prevail using false and misleading testimony. This forced Defendants to incur substantial fees to defend the rights affirmed by the TTAB. Accordingly, Defendants are entitled to an award of their reasonable attorneys' fees from both this action and the underlying administrative proceeding.

## II. FACTUAL BACKGROUND

This dispute has been pending before an agency or court since 2020. Plaintiff registered STARSTRUCK FARM with the USPTO after Defendants had already requested that he discontinue use of the name on the basis of their senior STARSTRUCK mark. Defendants successfully petitioned the TTAB to cancel Plaintiff's registration for STARSTRUCK FARM based on Defendants' senior rights in the famous STARSTRUCK mark for music and entertainment services. After full discovery and briefing, the TTAB sustained the petition. (Doc. No. 19-42).

Rather than accept the TTAB's well-reasoned decision, Plaintiff filed this action under 15 U.S.C. § 1071(b), forcing Defendants to relitigate the matter. At trial, Plaintiff's testimony was the centerpiece of his effort to minimize the overlap between his business and Defendants'. He testified under oath that artist management was the "last thing I would ever want to do with my life."

This testimony was directly impeached by Plaintiff's own marketing for "The Rising Star Sessions." The advertisement, which Plaintiff admitted was authentic, promoted auditions for house bands and solo acts, with winners receiving:

- A **Sponsorship & Artist Development Package** (over $3,000 in value), including professional **promotion, advertising, branding, and guidance**;
- Full exposure through Starstruck Farm's website and social media; and

- **Networking with Nashville's best musicians, singers, and industry connections.**

This is not the work of a simple recreational property owner. This is a direct solicitation for, and offer of, artist development and management services—the very services Plaintiff swore under oath he had no interest in providing and which are at the core of Defendants' business.

Likewise, Plaintiff's testimony that he carefully controlled his marketing was belied by evidence of 61 social media posts using "Starstruck" without the term "Farm." (Trial Tr. 64:21-25). Faced with this evidence, Plaintiff had no choice but to concede its authenticity and abandon his case. This last-minute surrender, after years of forcing Defendants to litigate, is the hallmark of a case that should not have been pursued.

## III. LEGAL STANDARD

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A party who secures a voluntary dismissal with prejudice, as Defendants have here, is a prevailing party. *United States v. Marion L. Kincaid Tr.*, 463 F. Supp. 2d 680, 691 (E.D. Mich. 2006) (holding that "the voluntary dismissal of a complaint with prejudice renders a defendant a 'prevailing party'" and collecting cases).

The Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), held that an "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554. Courts in the Sixth Circuit and elsewhere have widely adopted the *Octane Fitness* standard for Lanham Act cases. *See, e.g.*, *La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 75 F.4th 607, 613–14 (6th Cir. 2023).

A court may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6.

## IV. ARGUMENT

### A. This Case is Exceptional Under the Totality of the Circumstances

This case "stands out from others" for two primary reasons: (1) the substantive weakness of Plaintiff's position, and (2) the unreasonable manner in which he litigated it, culminating in false and misleading trial testimony.

#### 1. Plaintiff's Position Was Substantively Meritless

Plaintiff lost before the trademark examiner and lost again before the TTAB after a full hearing. He then appealed to this Court, which noted in its summary judgment opinion that key factors—including the similarity of the marks and the relatedness of the parties' services—weighed in favor of cancellation. (Doc. No. 30 at 12–13).

Plaintiff's entire trial strategy depended on minimizing the competitive overlap between the parties. Plaintiff's pervasive advertisements for music events—multiple weekly events, every week, going back years, and in particular the "Rising Star Sessions" advertisement—shattered that narrative. It provided irrefutable proof that Plaintiff was not merely hosting ancillary music nights but was actively building a competing musical entertainment and artist development business under a confusingly similar mark. The fact that Plaintiff dismissed his own case immediately after this evidence was presented is an admission that his position was, and always had been, untenable.

### 2. Plaintiff's Unreasonable Litigation Conduct Renders This Case Exceptional

Perhaps even more significant is the unreasonable manner in which Plaintiff litigated. His trial testimony was a calculated effort to mislead the Court about the nature and scope of his business, especially as it relates to direct competition with services Defendants offer under the STARSTRUCK mark. Denying any intent to manage musicians while simultaneously promoting a "Sponsorship & Artist Development Package" is litigation conduct that is, at best, objectively unreasonable and, at worst, undertaken in bad faith.

Forcing Defendants to prepare for and begin a trial, only to abandon the case when confronted with contradictory evidence drawn from one's own advertisements, is precisely the type of conduct that fee-shifting under § 1117(a) is designed to deter. This conduct wasted the resources of both Defendants and this Court.

## B. Defendants Are Entitled to Fees Incurred in Both the TTAB and District Court Proceedings

When a party appeals a TTAB decision to a district court under § 1071(b), the district court action is inextricably linked to the underlying administrative proceeding. *See Sullivan v. Hudson,* 490 U.S. 877, 892 (1989) ("[A]dministrative proceedings may be so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award."). Under these circumstances, fees incurred before both the TTAB and the district court are recoverable. Cf. *N. Carolina Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986) (authorizing recovery of "attorney's fees for time spent on administrative proceedings . . . prior to the litigation" in the context of another fee-shifting statute).

Those principles apply with full force here. A § 1071(b) action is expressly predicated on a completed TTAB proceeding; without the Board record, there is no district court case. The discovery, depositions, briefing, and factual development conducted before the TTAB are

inextricably linked to this litigation, by Plaintiff's choice. Indeed, Plaintiff chose § 1071(b) precisely because it allowed relitigation of the TTAB dispute in district court under the de novo standard, making the administrative and judicial phases part of a single, continuous controversy.

Denying recovery of TTAB fees would therefore create a perverse asymmetry: Plaintiff could force Defendants to defend the same meritless position first before the TTAB and then again in federal court, while insulating the administrative phase from fee shifting altogether. The Lanham Act does not compel that result. Where, as here, the TTAB proceeding was a necessary predicate to—and was substantively subsumed within—the district court action, reasonable attorneys' fees incurred in both phases are recoverable under § 1117(a).

### C. The Requested Attorneys' Fees Are Reasonable

Over six-plus years of litigation in two separate forums, Defendants have incurred $563,784.88 in attorneys' fees. Approximately $158,481.70 of this amount is attributable to the TTAB cancellation proceeding, and approximately $405,267.18 is attributable to this district court action. These fees are reasonable in light of the duration and complexity of the case, which involved extensive discovery, multiple rounds of summary judgment briefing (before the TTAB and this Court), and full preparation for trial on multiple occasions.

The attached Declarations of Chanelle Acheson, Tim Warnock, and Jacob Neu provide a comprehensive breakdown of the hours expended, the billing rates of the professionals involved, and a description of the work performed. *See* Acheson Decl. ¶¶ 3-12 & Ex. B; Warnock Decl. ¶¶ 2-5; Neu Decl. ¶¶ 2-8. This work includes, but is not limited to, core litigation tasks such as drafting complaints, answers, and amendments; preparing and filing the TTAB cancellation petition and related pleadings; preparing discovery requests, interrogatories, and document production; deposition preparation and depositions; summary-judgment briefing and responses; notices of reliance and TTAB trial briefs; and federal pretrial work including motions in limine,

witness subpoenas, exhibit lists, the pretrial order, witness and document preparation for trial, and the trial presentation itself. The rates charged are consistent with those of attorneys with comparable experience for similar trademark litigation in this market.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find this case exceptional and grant their motion for an award of reasonable attorneys' fees in the amount of $563,784.88.

Dated: February 5, 2026

Respectfully submitted,


/s/ Chanelle R. Acheson

Chanelle R. Acheson (TN BPR #30008)
W. David Bridgers (TN BPR #16603)
G. Edward Powell III (CA Bar #324530)
**Waddey Acheson LLC**
1030 16th Ave S, Suite 300
Nashville, TN 37212
615-839-1100
chanelle@waddeyacheson.com
Counsel for Defendants Starstruck Entertainment LLC and The Alexander Trust

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2026 a true and correct copy of the foregoing document has been served by electronic means via the court's e-filing system, which will send electronic notification to all counsel of record.

*/s/ Chanelle Acheson*
Chanelle Acheson